**COMMONWEALTH of Pennsylvania,**
**Appellant**

v.

**Frank CRESPO.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2005.

Decided Oct. 14, 2005.

Jaime M. Keating, Carlisle, for appellant.

J. Michael Sheldon, Lemoyne, for appellee.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, McCLOSKEY, Senior Judge.

Opinion by Judge McGINLEY.

The Commonwealth of Pennsylvania (Commonwealth)[1] appeals from an order of the Court of Common Pleas of Cumberland County (trial court) that granted Frank Crespo's (Crespo) motion for return of property.

On November 14, 2003, Crespo was arrested outside of the Highmark Blue Cross Blue Shield cafeteria and charged with the criminal offense of selling counterfeit merchandise in violation of Section 4119(a) (Trademark counterfeiting) of the Act, 18 Pa.C.S. § 4119(a).[2] Some of the counterfeit merchandise seized included trademarks such as "Gucci", "Coach", "Louis Vuitton", "Tiffany", and "Prada." The police also seized Crespo's van[3], a glass display case where the merchandise was displayed, a credit card machine, all counterfeit trademarks and those items (handbags, jewelry, and clothing) marked "generic" by police.

On October 19, 2004, Crespo pled guilty in the Criminal Division of the Court of Common Pleas of Cumberland County to one count of trademark counterfeiting in violation of Section 4119(a) of the Act, 18 Pa.C.S. § 4119(a). The criminal court sentenced Crespo to six months of unsupervised probation, court costs, and a fine of $500.

On November 9, 2004, Crespo filed a motion for the return of property[4] and alleged:

1. The Commonwealth in this present matter is the Cumberland County District Attorney's Office, Criminal Investigation Division.

2. Section 4119(a) of the Act provides that "[a]ny person who knowingly manufactures, uses, displays, advertises, distributes, offers for sale, sells or possesses with intent to sell or distribute any items or services bearing or identified by a counterfeit mark shall be guilty of the crime of trademark counterfeiting." (emphasis added).

3. The police later returned the van to Crespo.

4. Pa. R.C.P. No. 588 provides:

(A) A person aggrieved by a search and seizure, whether or not executed pursuant to a search warrant, may move for the

2. Upon his arrest, the [C]ommonwealth seized multiple items which were allegedly offered for sale.

. . . .

4. At sentencing, Defendant [Crespo] timely requested the return of all non-contraband items seized and was directed by the Honorable Edgar B. Bayley to file a Motion listing the non-contraband items.

5. Defendant [Crespo] presents that several items which were seized by police at the time of his arrest were not contraband items.

6. Police classified all seized materials in lots entitled "Items", with such lot categories containing both contraband and non-contraband materials.

7. Defendant [Crespo] avers that the following material seized in each "Item" lot were generic and should not be designated for permanent confiscation:

a. in "Item 1A": 1 generic blue purse.

b. in "Items 3 & 4": 62 pieces of generic jewelry; 2 jewelry trays; 1 ring sizer [sic].

c. in "Item 5": credit card machine which was used for legitimate sales of non-counterfeit items.

d. in "Item 6": 2 generic handbags.

e. in "Item 7": box of postal slips.

f. in "Item 8": 15 generic handbags.

g. in "Item 9": 8 generic handbags.

h. in "Item 10": 10 generic handbags.

i. in "Item 11": 5 generic handbags.

j. in "Item 12": 9 generic handbags.

k. in "Item 13": 1 generic briefcase; 9 generic purses.

l. in "Item 14": 10 generic scarves; 24 generic sweaters.

m. in "Item 15": 11 generic leather items.

n. in "Item 17": 1 generic wallet.

o. in "Item 18": 8 generic purses.

p. in "Item 19": 10 generic scarves; 6 generic sweat pants; 9 generic sweat tops; 10 generic sweaters.

q. in "Item 20": a generic glass display sales case.

Whereas, Defendant [Crespo] respectfully prays that this Honorable Court will Order the return of the above-listed materials to Defendant [Crespo].

Motion For Return Of Property, November 9, 2004, Paragraphs 2, 4–7 and Whereas Clause at 1–3; Certified Record at 20–22.

At an evidentiary hearing on December 20, 2004, Crespo testified that he pled guilty to the charge of selling counterfeit merchandise. Notes of Testimony (N.T.), December 20, 2004, at 5; Reproduced Record (R.R.) at A5. Crespo also testified that not all of the seized property was counterfeit and that "I have wholesalers that I buy all this merchandise from." N.T. at 7;

return of the property on the ground that he or she is entitled to lawful possession thereof. Such motion shall be filed in the court of common pleas for the judicial district in which the property was seized.

(B) The Judge hearing such motion shall receive evidence on any issue of fact necessary to the decision thereon. If the motion is granted, the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property forfeited.

The moving party bears the initial burden of establishing "entitlement to lawful possession" of the items. *Commonwealth v. Mosley*, 549 Pa. 627, 631, 702 A.2d 857, 859 (1997). Once this burden is met, the Commonwealth bears the burden to prove, by a preponderance of the evidence, that the items are either "contraband per se" or "derivative contraband" and therefore should not be returned to the moving party.

R.R. at A7. Crespo stated that he paid between "[t]wo to $3,000.00" for the merchandise. N.T. at 6; R.R. at A6.

Scott Young (Young), a private detective with Stumar Investigations, and Jeffery Franks (Franks), Detective of the Cumberland County Investigative Division, testified on behalf of the Commonwealth.

Young stated that "I've been doing this type of work now for approximately four and a half years, specifically in the trademark area, and have been trained by the Trademark Holders of the identification process to identify the real merchandise from counterfeit merchandise." N.T. at 13; R.R. A13. As to the handbags seized, Young stated how he was able to distinguish between the "counterfeit" handbag and the "generic" handbag.[5] Young continued that a company's trademark is "done different ways ... [s]ome of them are actually imprinted into the materials used ... [s]ome of them are stamped on ... [and] [s]ome are put on with tags or labels that would be put onto a purse." N.T. at 15; R.R. at A15. As to the seized jewelry, Young testified that "[t]he difference with the jewelry, most of the jewelry ... could either be stamped in with almost like a press or it could be put in a Tiffany and Company box and sold that way to simulate that it was a Tiffany product." N.T. at 16; R.R. at A16.

Franks testified that "Mr. Young pointed out to me that these items were counterfeit, which was a violation of the Crimes Code, and through the assignment with my chief detective I physically collected those." N.T. at 29; R.R. at A29. Franks concluded that Young also told him what merchandise was "generic." N.T. at 29; R.R. at A29.

On December 29, 2004, the trial court granted Crespo's motion and rejected the Commonwealth's argument:

> The Commonwealth argues that by selling lawful merchandise at the same time he was selling counterfeit merchandise, defendant [Crespo] facilitated the sale of that counterfeit merchandise. While the argument is facially appealing, the statute is not that encompassing. Under the Commonwealth's interpretation, a person could own nine Cadillac's lawfully for sale on a lot together with two vehicles with counterfeit markings, and all vehicles would be subject to forfeiture. Whether vehicles or general merchandise as in the present case, such lawful items are not knowingly employed or used in connection with the violation of Section 4119(a).

Opinion of the Trial Court, December 29, 2004, at 3. The trial court directed the Commonwealth to "return to defendant all non-counterfeit items of merchandise that do not violate Section 4119(a) of the Crimes Code, that it seized from him on November 14, 2003." Order of the Trial Court, December 29, 2004, at 4.

---

5. Jamie M. Keating (Keating), attorney for the Commonwealth, to Young:

Q: Going down the list then, there's a description of various, quote, unquote, generic bags. Is that your description of those bags?
A: Yes. That is what we used to determine whether or not the bag actually has or bears a counterfeit trademark or if it's one that is similar to but does not actually bear that trademark at that time.
Q: So, if it's similar to it but doesn't have the trademark on it that would be a generic one, correct?
A: That is correct.
Q: And then if actually has—if it's similar to it and has the trademark name on it, then that would be one of the ones that are actually the counterfeit bags, correct?
A: That is correct.
N.T at 14; R.R. at A14.

On appeal[6], the Commonwealth contends that the trial court erred when it ordered the return of Crespo's seized property. The Commonwealth asserts that pursuant to the broad language of Section 4119(f)(1) of the Act "any items, objects, tools, machines, equipment, instrumentalities, or vehicles of any kind" can be seized because the items ·can easily be converted from generic to counterfeit.[7]

### Whether The Commonwealth's Statutory Interpretation Of Section 4119(f) Of The Act Is Overly Broad?

■ Section 4119(f) (Seizure, forfeiture and disposition) of the Act, 18 Pa.C.S. § 4119(f), provides:

(1) *Any items bearing a counterfeit mark and all personal property, including, but not limited to, any items, objects, tools, machines, equipment, instrumentalities, or vehicles of any kind,* knowingly employed or used in connection with a violation of the section *may be seized by any law enforcement officer.* (emphasis added).

(2) All seized personal property referenced in paragraph (1) shall be *forfeited* in accordance with applicable law unless the prosecuting attorney responsible for the charges and the intellectual property owner consent in writing to another disposition. (emphasis added).

Initially, this Court must note that Section 1921(b) of the Statutory Construction Act, 1 Pa.C.S. § 1921(b), provides that "[w]hen the words of a statute are clear and free from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Further, Section 1922 of the Statutory Construction Act, 1 Pa. C.S. § 1922, provides that "[i]n ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among other things may be used ... (1) [t]hat the *General Assembly does not intend a result that is absurd, is impossible of execution or unreasonable."* (emphasis added).

In the present controversy, Young testified that the "counterfeit trademark" that appears on an item is what determines whether an item is generic or counterfeit. N.T. at 14; R.R. at A14. Young said that this distinction did not change even if the generic item was "similar" to the counterfeit item. N.T. at 14; R.R. at A14. Also, Young stated that the items in question could easily be converted from generic to counterfeit by attaching a "brand name" tag to the items. N.T. at 15 and 20; R.R. at A15 and A20. Again, on cross-examination, Young reiterated that there is no crime where a generic item is similar in appearance to a "brand name." N.T. at 23; R.R. at A23. In fact, Young admitted that he found only two "Coach" tags and they were unattached. Also, at the scene no "brand name" counterfeit tags were attached to the confiscated generic items and no stamping machine was present to

---

6. This Court's review is limited to a determination of whether the trial court's findings of fact are supported by competent evidence and whether the trial court abused its discretion or committed an error of law. *Commonwealth v. $8006.00 U.S. Currency,* 166 Pa. Cmwlth. 251, 646 A.2d 621 (1994).

7. It is the Commonwealth's position that the property seized was either "contraband *per se*" or "derivative contraband." Our Pennsylvania Supreme Court defined the terms "contraband *per se*" and "derivative contraband" as "[c]ontaband *per se* is property the mere possession of which is unlawful ... [and] derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act." *Commonwealth v. Howard,* 552 Pa. 27, 32, 713 A.2d 89, 92 (1998), *quoting Commonwealth v. Fassnacht,* 246 Pa.Super. 42, 369 A.2d 800, 802 (1977).

convert the generic items to counterfeit items.[8]

Further, Crespo testified that he bought the generic items from wholesalers and paid between two and three thousand dollars for the items.

■ If this Court adopted the Commonwealth's broad interpretation of Section 4119(f) of the Act, that a vendor who sells a "generic" item that may be "easily converted" to a counterfeit item by either attaching a brand name counterfeit tag or by stamping a trademark on the item, then those generic items would be subject to seizure. Clearly, the General Assembly did not intend such an absurd result. Although not factually on point,[9] our Pennsylvania Supreme Court's rationale in *Commonwealth v. Twelve Dodge City Video Poker Machines*, 517 Pa. 363, 537 A.2d 812 (1988) is relevant to the present controversy, "it is the actual condition of the machine [in this matter the generic handbags and jewelry, etc.] at the time it is confiscated which controls when no evidence of gambling activity [here, the generic handbags without the attached brand name counterfeit tags and the generic jewelry without counterfeit logo, etc.] is introduced." [10] *Id.* at 367, 537 A.2d at 814. As

---

8. J. Michael Sheldon, Crespo's attorney, to Young:

Q: Sir, looking under line seven, the averment number seven, where it lists from A through Q, all the generic items, just roughly would you agree with me that that lists at least 91 generic handbags?
A: I would guess that you've already done the math, counselor, so I will trust your addition.
Q: Those tags were not attached to any of those handbags, were they?
A: Not when they were observed.
Q: In fact, if anything was deemed to be counterfeit, it was because there was some branding or some trademark attached or affixed to them in some manner, isn't that correct?
A: Yes, that is correct.
Q: You didn't witness Mr. Crespo putting any tags on any of these generic items, did you?
A: No, I did not see him place any tags directly on the items.
. . . .
Q: You didn't see a stamping machine there, did you?
A: No, I don't recall one.
Q: Or a labeling machine in anyway?
A: Labeling? I'm not sure—
Court: Any other kind of machine other than the credit card machine?
A: No.
N.T. at 25–26; R.R. at A26–A27.

9. In *Twelve Video Poker Machines*, the poker machines were seized pursuant to 18 Pa.C.S. § 5513(b) that relevantly provides that "[a]ny gambling device possessed or used in viola-

tion of the provisions of subsection (a) of this section shall be seized and forfeited to the Commonwealth."

10. As to the other items seized, the following questions were posed by Keating to Young:

O: At some point did you see a credit card machine there?
A: Yes, I did.
Q: Where did you see the credit card machine?
A: It was on a window ledge. As I stated before, the items were displayed on an L-shaped, and it was at the back of the building on a window ledge sitting there with some business cards, and I think there was some receipts like that as well.
. . . .
Q: Well, there's a list of sweaters and clothing on there too. What type of clothing were seized? I believe sweatpants and let me see down here, generic scarves, sweatpants, sweat tops and sweaters. Were you present when they were seized?
A: Yes, I was.
O: Why were they seized?
A: They were seized—all of the merchandise that was there on display was seized by law enforcement. At that time the decision was made to seize all the merchandise there. The business had their cafeteria and they had an ongoing business within there. We didn't want to disturb their business anymore than necessary, and then after everything was seized we went through and categorized it.
Q: Well, the generic clothing then, were they similar to any trademark type clothing?

to these generic items, without more, the Commonwealth's case was sheer supposition.

Accordingly, this Court affirms as to the return of all generic handbags, jewelry, and clothing as well as the credit card machine and postal slips and reverses as to the return of the glass display case.

## ORDER

AND NOW, this 14th day of October, 2005, the order of the Court of Common Pleas of Cumberland County in the above-captioned matter is affirmed as to the return of all generic items, the credit card machine, and postal slips and reversed as to the return of the glass display case.

A: I do not recall specifically whether or not they were. I do remember some of them that were just a type of clothing that some could sell anywhere but the clothing would have been—it was on display with the other merchandise.

Q: *And what about the glass display for sales cases, was that jewelry cases that we're talking about* ? (emphasis added).

A: *Yes. I believe it's a glass display case, probably two and a half feet by two and a half feet, just guessing as far as size, that items such as jewelry or small things could be displayed in. (emphasis added).*

Q: *And were some of the counterfeit jewelry items displayed in those display cases?* (emphasis added).

A: *Yes, they were.* (emphasis added).

Q: Finally, I think—oh, the box of postal slips, why were they taken, do you recall, or what they were?

A: I do not recall exactly what the postal slips were. The reason ... that we would take postal slips in something like this is to show how things are being ordered, shipped, mailed and delivered.

N.T. at 16–17, and 21–22; R.R. at A16–17 and A21–A22.

Here, the only item properly seized by the Commonwealth pursuant to Section 4119(f)(1) of the Act, 18 Pa.C.S. § 4119(f), was the glass display case as "derivative contraband."