**Preston LINDEY and David Lindey, d/b/a Best Processing Company, Petitioners**

v.

**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Respondent.**

Commonwealth Court of Pennsylvania.

Heard Sept. 5, 2006.

Decided Nov. 21, 2006.

Ordered Published February 20, 2007.

Matthew J. McLaughlin, Erie, for petitioners.

Kemal Alexander Mericli, Pittsburgh, for respondent.

OPINION BY Senior Judge FEUDALE.

Petitioners in this original jurisdiction action seek to preliminarily enjoin the Pennsylvania State Police, Bureau of Liquor Control Enforcement from confiscating certain coupons and coupon-dispensing machines, referred to as "Ad–Tab" from licensed establishments in the Erie, Pennsylvania area. At issue is whether the coupons and dispensers constitute "gambling devices" pursuant to 18 Pa.C.S. § 5513. Such devices are prohibited in licensed establishments according to case-law and Liquor Control Board regulations.[1]

Petitioners sell and distribute advertising discount coupons known as "Ad–Tabs." These items are marketed under an agreement between petitioners and F.A.C.E. Trading, Inc., a Wisconsin Corporation. The "Ad–Tabs" are discount coupons good for discounts on a number of products and services, such as hotel stays, clothing, DVD's and board games. In ad-

---

1. Although gambling is not a specific violation of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 1–101—10–1001, a license can be revoked if gambling is conducted on licensed premises. *In re Catering Club Liquor License No. CC–4837,* 63 Pa. Cmwlth. 313, 438 A.2d 662 (1981).

dition to product discounts, however, the "Ad–Tabs" also contain a rub-off section offering the chance to win a cash prize, ranging from $5 up to $250.

The Liquor Control Board, on January 4, 2002, issued Advisory Opinion No. 02–016, concluding that the sale and/or use of "Ad–Tabs" by Board licensees is prohibited under § 5.32(f) of the Board's regulations, 40 Pa.Code § 5.32(f), and Section 471 of the Liquor Code, 47 P.S. § 4–471. The Bureau of Liquor Control Enforcement then began confiscating petitioners' machines located in licensed premises in the Erie area. Petitioners filed the present action in the Court of Common Pleas of Erie County, seeking both equitable and monetary relief. The Common Pleas Court sustained respondent's preliminary objections on subject matter jurisdiction and transferred the case to the Commonwealth Court. We note that no further pleadings have been filed to date in this Court.

In essence, we are asked to determine, for the purpose of entering a preliminary injunction, whether the "Ad–Tab" coupons are primarily a product in which a customer purchases a discount coupon to which there is an incidental "prize" element attached, or rather whether the coupons are simply a thinly disguised lottery scheme marketed under the cover of a "discount coupon."

■ We begin by noting that a party seeking a preliminary injunction bears the burden of showing:

(1) that an injunction is necessary to prevent immediate and irreparable harm that cannot be compensated by damages;

(2) greater injury would result from refusing an injunction than from granting it;

(3) that an injunction will restore the parties to the *status quo ante;*

(4) that the petitioning party is likely to prevail on the merits;

(5) that the injunction sought is reasonably suited to abate the offending activity; and

(6) that the injunction will not adversely affect the public interest.

*Summit Towne Centre, Inc. v. The Shoe Show of Rocky Mount, Inc.,* 573 Pa. 637, 828 A.2d 995 (2003).

Here, the precise issue of whether "Ad–Tabs" constitute a gambling device is one of first impression in Pennsylvania. Petitioners cite two relevant cases from other jurisdictions, including a California case involving the same "Ad–Tabs." In *McVeigh v. California Department of Alcoholic Beverage Control,* an unpublished trial court opinion from Los Angeles County filed in 2004, the trial judge, in what appears to be a motion to return seized property, concluded that the State's seizure of similar machines and their contents was not lawful, since the machines could not be construed as "slot machines" and the coupons did not violate California's law against illegal punchboards. While this case may involve an identical product, we decline to give much, if any, persuasive value to an unpublished trial court opinion applying California law.

Petitioners also cite *American Treasures, Inc. v. State of North Carolina,* 173 N.C.App. 170, 617 S.E.2d 346 (2005), a case involving pre-paid phone cards that included a "prize element." Although not controlling, we find this case to be somewhat more persuasive. In *American Treasures,* pre-paid phone cards were sold for $1 each, entitling the purchaser to two minutes of pre-paid long-distance calls. The cards, however, also contained a rub-off area in which prizes were offered in amounts up to $50,000 or prizes such as a

Corvette. As to the 'prize promotion portion, consumers could obtain a free "game piece" without purchasing the phone card simply by writing to a designated address and including a stamped self-addressed envelope. Evidence was adduced that some 11,664 individuals had received such "free" game pieces. Based on this record, the trial court concluded that the game was "incidental" to the sales of the phone cards and did not constitute an illegal lottery and enjoined the State from interfering with the placement of phonecard dispensers in convenience stores selling alcoholic beverages. The Court of Appeals affirmed, noting, however, that the phonecard case differed significantly from earlier cases in which patrons paid more than the value of the item in order to secure a change to win something of greater value, such could be construed as a lottery. *Id.* at 351. Significantly, the trial court in *American Treasures* found that the payment of $1 for two minutes of pre-paid long distance service was not "merely competitive, but one of the best in the industry." *Id.*

The North Carolina Court, however, noted that where the legal product offered for sale is a "mere subterfuge" for an otherwise unlawful gambling activity, the Court will "strip the transaction of all its thin and false apparel and consider it in its very nakedness [and] look to the substance and not to the form of [the transaction] in order to disclose its real elements...." *Id.* at 350 (citing *State v. Lipkin,* 169 N.C. 265, 84 S.E. 340 (1915)).

The Attorney General also points out that courts of several of our sister states have determined that similar coupons constitute gambling. See *F.A.C.E. Trading Inc. v. Dept. of Consumer and Industry Services,* 270 Mich.App. 653, 717 N.W.2d 377 (2006); *Sniezek and F.A.C.E. Trading, Inc. v. Colorado Dept. of Revenue,* 113 P.3d 1280 (Col.App.2005); *F.A.C.E. Trad-*

*ing, Inc. v. Carter,* 821 N.E.2d 38 (Ind. App.2005). These Courts, considering identical or very similar schemes, have determined that the coupons are merely a subterfuge for the gambling device. The most recent "Ad–Tab" case was decided in Maryland in July, 2006, with the Maryland Court again concluding that the coupons were "gambling devices." The evidence in the Maryland case showed that between 85% and 99% of the persons purchasing the coupons did not redeem them for the "discounts," and, therefore, purchased the coupons primarily for the cash prize component. *F.A.C.E. Trading, Inc. v. Todd,* 393 Md. 364, 903 A.2d 348 (2006).

■ In this case, the parties stipulated to the entry of exhibits and of a transcript of the hearing before the Hon. John A. Bozza in the Erie Court of Common Pleas prior to that court's transfer of the case. On this record, we cannot conclude, as did the North Carolina Court, that the game is "incidental" to the sales of discount coupons. Rather, the record supports a finding that the coupons are a subterfuge for the gambling device. Of significance, we believe, is the testimony of BLCE agents, who observed that purchasers would typically throw away "losing" coupons in large numbers. More telling, however, is the testimony of Douglas Keys, one of the agents, who, after purchasing "winning" coupons, exchanged them for cash at two different establishments. Keys also requested the return of the "discount coupon" portion, and was told that they could not be returned.

On this record, we cannot conclude that petitioners have shown a clear right to relief for the issuance of a preliminary injunction. Moreover, we find that the balancing of harms in this matter favors the denial of preliminary injunctive relief. Accordingly, the motion for preliminary injunction is DENIED.

## ORDER

AND NOW, this 21st day of November, 2006, petitioner's motion for preliminary injunction in the above-captioned matter is DENIED.

**LANCASTER NURSING CENTER (Audubon Villa), Petitioner**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 12, 2006.

Decided Nov. 28, 2006.

Publication Ordered Feb. 26, 2007.

Donald R. Reavey, Harrisburg, for petitioner.

Kathleen A. Grogan, Sr. Asst. Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

Lancaster Nursing Center (Petitioner), a medical assistance program provider, contested an audit report of the Department of Public Welfare (DPW) and filed a medical assistance reimbursement claim against DPW with the Board of Claims (Board) on July 22, 1998. The Board transferred Petitioner's appeal to DPW's Bureau of Hearings and Appeals (Bureau) on November 29, 2005 after the Supreme Court's ruling in *Department of Public Welfare v. Presbyterian Medical Center of Oakmont*, 583 Pa. 336, 877 A.2d 419 (2005) (hereafter referred to as "transferred appeal"). By order dated February 17, 2006, the Bureau dismissed the transferred appeal as untimely because it was not filed within thirty days of DPW's notice of adverse action and because Petitioner already had a timely appeal before the Bureau contesting the same audit report at docket number 23–98–125.

Petitioner seeks reversal of the Bureau's February 2006 order and a remand with directions to the Bureau to accept the transferred appeal at Bureau docket number 94–05–372 as having been timely filed and to consolidate the transferred appeal with Petitioner's appeal filed in the Bureau on February 20, 1998 at docket number 23–98–125. Petitioner states in its questions for review that the Bureau erred in relying on *Davis v. Commonwealth*, 660 A.2d 157 (Pa.Cmwlth.1995), to support the dismissal; that it should be equitably estopped from asserting lack of jurisdiction in the Board given its prior accepted jurisdiction over similar reimbursement claims; that DPW's notice of adverse action was defective; that a remand is necessary for additional findings to determine whether Petitioner is entitled to *nunc pro tunc* relief; and that Petitioner was denied due process when the Bureau failed to hold a hearing to determine the *nunc pro tunc* relief.

Petitioner, a licensed long-term nursing care facility, participates in the Pennsylvania Medical Assistance Program under a medical assistance provider agreement with DPW. Reproduced Record (R.R.) at 2a. By transmittal letter of January 21, 1998, the Office of Medical Assistance Programs, Bureau of Long–Term Care Programs, issued a Statement of Allowable Cost for the six-month period ending December 31, 1995 (audit report) after examining information in Petitioner's financial and statistical reports (cost report). The Bureau determined that the information provided by Petitioner supports reimbursement for allowable costs for intermediate care in the sum of $220,536.96 and for heavy care in the sum of $82,255.68, or a total of $302,792.64. *See* Exhibit B, R.R. at 13a–17a.

By transmittal letter of February 3, 1998, the Office of the Budget issued a Final Cost Settlement Report (settlement report) signed by the Assistant Comptroller for Medical Assistance Programs after review of the audit report. The settlement report provided that Petitioner was due additional fees of $3,279.08 to settle its allowable costs of $302,792.64. R.R., Exhibit A at 10a–12a. On February 20, 1998, Petitioner timely appealed to the Bureau.[1]

---

1. 55 Pa.Code § 1101.84 provides in pertinent part:

    (b) *Right to appeal interim per diem rates, audit disallowances or payment settlements.*

It challenged DPW's cost adjustments involving depreciation and interest on capital indebtedness and indicated that it may file an appeal in the Board without prejudice to the right to litigate the appeal filed in the Bureau. *See* Joint Stipulation to Supplement the Certified Record dated November 2, 2006.

(1) A hospital, nursing home or other provider reimbursed by the Department on the basis of an interim per diem rate that is retrospectively adjusted on the basis of the provider's cost experience during the period for which the interim rate is effective can appeal its interim per diem rate, the results of its annual audit or its annual payment settlement as follows:

. . . .

(ii) The Notice of Appeal from an audit disallowance shall be filed within 30 days of the date of the letter from the Bureau of Reimbursement Methods, Office of Medical Assistance, or the Bureau of State–Aided Audits, Office of the Auditor General, transmitting the provider's audit report. If a facility fails to appeal from the auditor's findings at audit, the facility may not contest the finding in another proceeding.

(iii) The Notice of Appeal of the final payment settlement shall be appealed within 30 days of the date of the letter from the Comptroller of the Department, advising the provider of the final settlement of accounts.

55 Pa.Code § 1181.101 further provides:

(a) A nursing facility has a right to appeal and have a hearing if dissatisfied with the Department's decision regarding:

. . . .

(2) The findings of the auditors in the annual audit report.

(3) The determination by the comptroller of the difference between the allowable costs certified by the auditors in the annual audit report, and the total allowance amount as shown on the interim billing.

. . .

(c) An appeal shall be taken within 30 days of the date that the facility is notified of the decisions in subsection (a). Findings contained in a facility's audit report which are not appealed by the facility within the 30–day limit will not be considered as part of subsequent appeal proceedings.