IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pinnacle Amusement, LLC          :
                                 :
          v.                     :     Nos. 609 - 612 C.D. 2022
                                 :     Argued: April 3, 2023
Bureau of Liquor Control         :
Enforcement,                     :
                    Appellant    :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE DUMAS                                    FILED: July 6, 2023


         The Bureau of Liquor Control Enforcement (BLCE) appeals from the opinion and order entered in the Luzerne County Court of Common Pleas (trial court) on May 18, 2022, granting Pinnacle Amusement, LLC's (Pinnacle) motions for return of property as to all gaming machines seized by the BLCE and denying BLCE's forfeiture petitions. After careful review, we affirm.

## I. BACKGROUND[1]

         In 2019 and 2020, investigators from BLCE conducted cross-county undercover operations at several liquor-licensed establishments. The investigations centered around several varieties of electronic gaming machines. After BLCE's investigations, which involved paying consideration, engaging in gameplay on the devices, and receiving rewards in the form of vouchers that could be exchanged for

---

[1] Unless otherwise stated, we base the recitation of facts on the trial court's opinion filed May 18, 2022. *See* Trial Ct. Op., 5/18/22, at 1-27.

currency, 11 machines were seized from their respective establishments. Ten of the 11 gaming devices were operated by Banilla Games and owned by Pinnacle.

The gaming machines are "nudge" or "hot swap" games, where a player inserts cash and receives digital credits on the machine. The player then selects a theme, wager amount, and spins the reels. Once the reels stop, the "nudge" player can rotate or "nudge" the reels to attempt aligning them in a winning pattern. The "hot swap" player can substitute or swap one of the reel symbols with a symbol held in a pool outside the reels. When a player has the possibility of creating a winning pattern, the machine will not allow a player to proceed to the next spin, but rather, forces the player to attempt a nudge or swap. If a player successfully creates a winning pattern through nudging or swapping, they are rewarded with credits based on the wager, and can spin the reels again. If the player cannot create a winning pattern, the game presents an on-screen option to engage in a secondary round of play called "Follow the Banana," which has its own rules and gameplay. It is a memory game that displays an increasingly difficult pattern of bananas, and if the player does it successfully, he or she can recoup 104% of the last wager on the game of chance.

Pinnacle filed, in the Luzerne County Court of Common Pleas, a motion pursuant to 42 Pa.C.S. § 5806(a)(1) and Pa.R.Crim.P. 588 for the return of the gaming machines seized from one of the establishments. BLCE filed an answer in opposition to the return of the property and a petition for forfeiture pursuant to 42 Pa.C.S. § 5803. Subsequently, Pinnacle filed motions for the return of the gaming machines seized from the other establishments, some of which were filed in other jurisdictions.

All matters were consolidated in Luzerne County, and the trial court held an evidentiary hearing on February 18, 2022. At the hearing, Pinnacle presented testimony from several expert witnesses who described the gameplay experience available on the machines and opined that the Banilla games were skill games, rather than games of chance. For its part, BLCE provided testimony from officers involved in the investigation and whose testimony focused on wager amounts, awards available, and those elements of gameplay left to chance.

Concluding that Pinnacle's machines did not constitute gambling devices *per se*, the trial court issued an opinion and order granting Pinnacle's motions for return of property as to all gaming machines seized by BLCE and denying BLCE's forfeiture petitions. BLCE timely appealed to this Court. The trial court did not issue an order pursuant to Pa.R.A.P. 1925(b) but instead filed a statement and order in lieu of opinion pursuant to Pa.R.A.P. 1925(a)(1), citing its prior opinion. The matters were again consolidated in this Court.

## II. ISSUE

On appeal, the sole issue is whether Pinnacle's gaming machines are gambling devices *per se*. *See* BLCE's Br. at 4. According to BLCE, the machines are gambling devices *per se* because they offer reel games similar to slot machines, in that chance predominates over skill and that the "skill" portion of the game is only a pretext, designed to discourage players from pursuing it. *Id.* at 4, 15. Moreover, BLCE contends, the mere inclusion of purposely unappealing skill-based games to transform a gambling device into a game of skill creates a slippery slope that could allow others to circumvent Pennsylvania's prohibition on illegal gambling. *See id.* at 16.

## II. ANALYSIS[2]

To defeat Pinnacle's motion for return of property and to establish its right to forfeiture, BLCE sought to establish that the gaming machines were derivative contraband.[3] "Derivative contraband is property innocent by itself, but used in the perpetration of an unlawful act. An example of derivative contraband is a truck used to transport illicit goods." *Commonwealth v. Irland*, 153 A.3d 469, 473 (Pa. Cmwlth. 2017), *aff'd*, 193 A.3d 370 (Pa. 2018) (citation omitted). Further, "[p]roperty is not derivative contraband merely because it is owned or used by someone who has been engaged in criminal conduct. Rather, the Commonwealth

---

[2] "In an appeal from a forfeiture proceeding, this Court reviews whether findings of fact made by the trial court are supported by substantial evidence, and whether the trial court abused its discretion or committed an error of law." *Commonwealth v. 1997 Chevrolet*, 106 A.3d 836, 847 n.9 (Pa. Cmwlth. 2014). "Our standard of review is deferential with respect to the trial court's findings of fact. Whether the evidence, as a whole, is sufficient to support a legal conclusion is a question of law." *See id.* Our scope of review over questions of law is plenary. *See id.* The trial court as a factfinder is "the ultimate judge of credibility and resolves all conflicts in the evidence." *See Lodge v. Robinson Twp. Zoning H'rg. Bd.*, 283 A.3d 910, 925 (Pa. Cmwlth. 2022). As with any other witness, the factfinder "is free to accept or reject the credibility of expert witnesses, and to believe all, part, or none of the evidence." *City of Phila., Bd. of Pensions & Ret. v. Clayton*, 987 A.2d 1255, 1262 (Pa. Cmwlth. 2009). As long as sufficient evidence exists in the record "which is adequate to support the [factfinder's] determination, an appellate court is precluded from overturning these determinations." *See id.*

[3] In the proceedings below, the trial court explicitly rejected BLCE's reliance on the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101-1904 (Gaming Act) for the proposition that the seized machines were contraband. Trial Ct. Op. at 17. Rather, the instant controversy must be decided under the framework that stems from Section 5513 of the Crimes Code. *See* Trial Ct. Op. at 17 (citing *POM of Pa., LLC v. Dep't of Revenue*, 221 A.3d 717, 731 (Pa. Cmwlth. 2019) ("[T]he Gaming Act does not apply to unlicensed and/or illegal slot machines."); *see also POM of Pa*, 221 A.3d at 736 ("[S]ection 5513 of the Crimes Code, rather than any relevant provision of the Gaming Act, remains the preeminent statute governing illegal and unlicensed slot machines in the Commonwealth.")). The trial court noted that, at the hearing, BLCE acknowledged the inapplicability of the Gaming Act to the instant controversy, but later attempted to re-raise those arguments. Trial Ct. Op. at 17. Regardless, BLCE has abandoned arguments regarding the Gaming Act on appeal before this Court.

must establish a specific nexus between the property and the alleged criminal activity." *See id.*

With regard to the instant case, a person is guilty of a first-degree misdemeanor if he "intentionally or knowingly makes, assembles, sets up, maintains, sells, lends, leases, gives away, or offers for sale, loan, lease or gift, any punch board, drawing card, slot machine or any device to be used for gambling purposes, except playing cards." *See* 18 Pa.C.S. § 5513(a). Also prohibited are "electronic video monitors" which offer simulated gambling programs. *See* 18 Pa.C.S. § 5513(a.1). Any gambling device that is used in violation of the provisions of the statute shall be seized and forfeited to the Commonwealth. 18 Pa.C.S. § 5513(b).[4]

The inquiry to determine whether a device is a gambling device *per se* is whether the machine is "so intrinsically connected with gambling" as to constitute

---

[4] We briefly note the procedure and standards for petitions for forfeiture and return of property. Anyone aggrieved by a search and seizure may move for the return of the property by motion. 42 Pa.C.S. § 5806(a)(1); *see also* Pa.R.Crim.P. 588(a). If the motion is granted, "the property shall be restored unless the court determines that such property is contraband, in which case the court may order the property to be forfeited." *See id.*

"[T]he moving party must establish by a preponderance of the evidence entitlement to lawful possession. Once that is established, unless there is countervailing evidence to defeat the claim, the moving party is entitled to the return of the identified property." *Singleton v. Johnson*, 929 A.2d 1224, 1227 (Pa. Cmwlth. 2007). A claim can be defeated if an opposing party can establish that it is entitled to lawful possession of the property or if the Commonwealth can establish that the property is contraband. *See id.* at 1227 (citing *Commonwealth v. Crespo*, 884 A.2d 960 (Pa. Cmwlth. 2005)). "If the Commonwealth seeks to defeat the claim, it bears the burden to prove, by a preponderance of the evidence, that the items are either 'contraband *per se*' or 'derivative contraband,' and therefore should not be returned to the moving party." *Commonwealth v. Trainer*, 287 A.3d 960, 964 (Pa. Cmwlth. 2022).

"To meet its burden to defeat the motion for return of property, the Commonwealth must make out more than simply demonstrating that the property was in the possession of someone who has engaged in criminal conduct. It must establish a specific nexus between the property and the criminal activity." *Singleton*, 929 A.2d at 1227. "When the Commonwealth sustains that burden, the burden of proof shifts to the property owner to disprove the Commonwealth's evidence or establish statutory defenses to avoid forfeiture." *Commonwealth v. 1992 Chevrolet*, 844 A.2d 583 (Pa. Cmwlth. 2004).

a gambling device *per se*. *Commonwealth v. Two Electronic Poker Game Machines*, 465 A.2d 973, 977 (Pa. 1983). We look to "the characteristics of the machine when read against" the elements necessary to gambling. *See id.* Pennsylvania courts have determined that there "are three elements to gambling: consideration, chance, and reward." *Commonwealth v. Dent*, 992 A.2d 190, 192 (Pa. Super. 2010) (citing *Two Electronic Poker Game Machines*, 465 A.2d at 977).[5, 6] Regarding the second factor, the Pennsylvania Supreme Court set forth the "predominate factor test," which states that, for a machine to constitute a gambling machine, it must be a game where chance predominates rather than skill. *See Two Electronic Poker Game Machines*, 465 A.2d at 977. When making this determination, the "court should determine the relative amount of chance and skill present in the game; and if the element of chance predominates, the game is a gambling game." *See id.* at 978. Therefore, the main issue in this case is whether we should interpret the evidence regarding the Banilla games as showing a predominance of skill, or a predominance of chance.[7] If the

---

[5] "In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[6] The Crimes Code defines consideration associated with a related product, service, or activity, in the context of the statute, as "[m]oney or other value collected for a product, service or activity which is offered in any direct or indirect relationship to playing or participating in the simulated gambling program. The term includes consideration paid for computer time, Internet time, telephone calling cards and a sweepstakes entry." *See* 18 Pa.C.S. § 5513(f). The Pennsylvania Supreme Court has observed that tokens and prizes do not necessarily rise to the level of a reward, but that players must be able to "win an amount of equal or greater value than the amount he played in the machine." *Commonwealth v. Irwin*, 636 A.2d 1106, 1109 (Pa. 1993). Regardless, neither the definitions of consideration nor reward are central to our disposition of this matter.

[7] Additionally, it should be noted that the courts have not defined "chance." Here, the trial court appropriately turned to Black's Law Dictionary and used the definition as "the unforeseen, uncontrollable, or unintended consequences of an act." *See* Trial Ct. Op. at 21 (citing *Chance*, Black's Law Dictionary (11th ed. 2019)).

6

games show a predominance of chance, then the games may be considered gambling devices *per se*.  *See id.* at 977-78.

BLCE contends that the court erred and abused its discretion in granting the motions for return of property, because the machines at issue are gambling devices *per se*.  BLCE's Br. at 4.  According to BLCE, the primary reel games offered on the machines constitute games of chance, and Pinnacle's reliance on an optional, secondary skill game to win is a pretext, only offered to conceal the true nature of the games as gambling devices.  *See id.* at 15.  BLCE contends that the "nudge" and "swap" are not skills and that the primary game is solely one of chance.  *See id.* at 21.

Further, BLCE avers that the "Follow the Banana" phase was designed to discourage players from playing it and few players in real-life settings actually do play it.  *See id.* at 15.  According to BLCE, allowing the mere inclusion of purposely unappealing skill-based games to transform a gambling device into a game of skill creates a slippery slope that could allow others to circumvent Pennsylvania's prohibition on illegal gambling.  *See id.* at 16.  In BLCE's view, the illegal gambling occurs once the player inserts currency into the machine and plays a reel game that is a game of chance.  *See id.* at 20.

Pinnacle responds that BLCE is attempting to relitigate the policy arguments rejected by the trial court.  *See* Pinnacle's Br. at 21.  Rather, Pinnacle asserts, the devices were improperly seized as unlawful gambling devices *per se*, and the "slippery slope" arguments simply are not supported by the record.  *See id.*

Pinnacle contends that the "nudge" and "swap" phase has elements of both skill and chance, and that the player must interact with the game to make moves to create a winning arrangement of symbols.  *See id.* at 31-32.  Additionally, despite

7

the trial court's observation that this portion of the game could be said to be chance-based, a player is always able to obtain a winning result through the successful completion of "Follow the Banana," which is solely a skill game. *See id.* at 32-33. According to Pinnacle, the gambling analysis must encompass the *entire* operation of the game, and BLCE's argument that gambling begins at the first instance is inconsistent with what it characterizes as a "total game analysis" framework utilized by Pennsylvania courts. *See id.* at 33-34. Pinnacle concludes that it is not suggesting that all reel games involving both skill and chance should be legal *per se*, simply that the games in question are predominated by skill in accordance with Pennsylvania case law. *See id.* at 21-22.

At the hearing, Susan Hensel, Esq., a co-founder and partner in a gaming advisory firm and expert witness in the field of "gaming regulations," testified regarding the nature of the games. She described the game play in detail and noted that if a player is unsuccessful in creating a winning pattern, they are presented with an on-screen option to engage in a secondary round of play called "Follow the Banana." This is a memory game that displays an increasingly difficult pattern of bananas, and if the player does it successfully, he can recoup 104% of his last wager on the game of chance. Hensel testified that various player skills are contemplated in both reel and pattern rounds, including pattern recognition, understanding and knowledge of rules of the game, dexterity, memory, and cognitive capabilities. Due to the fact that these skill factors can determine the outcome of the games, Hensel opined that the Banilla games are skill games. *See* N.T., 2/18/22, at 11-48.

Nick Farley, president of Nick Farley & Associates, Inc. d/b/a Eclipse Compliance Testing (NFA), testified as an expert in the field of game classification,

8

mechanics, and analysis. Farley testified that an element of chance does dictate the prizes available in the reel round, in that there is a predetermined, finite pool of outcomes, but noted that this round still includes aspect of skill. Farley testified that the Banilla games are winnable every time and a player can get better with practice. He opined that skill determines the outcome. *See id.* at 49-75.

Finally, Albert Ceccoli testified that the "Follow the Banana" feature is enabled on the machines distributed to ensure that a player has the potential to "beat" Pennsylvania Coin monetarily every play. *See id.* at 76-80.

Trooper Gabriel Gigliotti testified for BLCE that he engaged in gameplay on all of the machines and played the "Follow the Banana" feature. Trooper Gigliotti also testified that he had never encountered a game of skill and that he never observed anyone playing "Follow the Banana" during his investigations. *See id.* at 81-96. Officer Ross Homentosky testified regarding wager amounts and the maximum amount of "rewards" a player could have printed on a single prize voucher. He demonstrated for the court his "rapid play" method of using the machines, as well as the machines' autoplay features. *See id.* at 97-108.

Instantly, the trial court interpreted the above evidence as showing elements of both chance and skill in the games. Trial Ct. Op. at 20-21. Specifically, the testimony established that regardless of a player's skill, "(1) what combination of symbols are presented by the reels prior to a nudge or swap attempt; (2) what symbols are available to a player with which to attempt a nudge or swap; and (3) what prize is available to the player in any given round of reel play are left to chance." *See id.* However, the evidence also showed that "after having attempted to perform a nudge or swap—as may be appropriate for the theme of game selected—a player is always able, through the exercise of skill, to obtain a winning

9

result in every round of play on every Banilla game through the successful completion of the "Follow the Banana" task. Where a player, through the exercise of skill, is able to obtain a successful outcome in every single round played in every single game theme, there is little doubt that skill predominates over chance." *See id.* at 20. Thus, the trial court concluded that Pinnacle had proven by a preponderance of the evidence that the games were predominantly a game of skill, and thus, not gambling machines *per se*. *See id.*

BLCE heavily relies upon *Commonwealth v. Lund*, 15 A.2d 839 (Pa. Super. 1940), but this reliance is unavailing. In *Lund*, the defendant was convicted of maintaining a lottery by setting up and conducting a practice known as "Bank Night" in theatres he owned. The theatres hosted drawings, where patrons could put their name on a list for prize drawings; to claim the prize, the patron must have been present at the drawing. *See id.* at 842. However, patrons could also purchase a "proxy card" by buying admission to and attending an afternoon show at the theatre, and, if the name was drawn, the patron could still claim the prize due to being present in "proxy." *See id.* Additionally, some proxy cards were given away for free. *See id.* The parties conceded that a drawing conducted with closed participation is a lottery, even if the price or cost of the ticket was included in the original price of the theatre ticket. *See id.* at 842-43. However, the defendant argued that the element of consideration was not present in all situations, and thus did not constitute a lottery. *See id.* at 843. The Court determined that the whole of the operation must be examined, and that despite the defendant's attempts to offer occasional free admissions and chances, the overall effect of the scheme was that of a lottery. *See id.* at 845. Not only does *Lund* predate *Two Electronic Poker Game Machines* by 39 years, it has not been cited by an appellate court since 1955. Additionally, the

10

holding in *Lund* concerns lotteries, which are by nature games of chance, rather than gaming machines. *See, e.g.*, *Commonwealth v. Lane*, 363 A.2d 1271, 1272 (Pa. Super. 1976) (basic elements of a lottery are a prize to be won, the winner is determined by chance, and the player must pay consideration).

BLCE also relies upon *Lindey v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 916 A.2d 703 (Pa. Cmwlth. 2006), which involved scratch-off coupons, to argue that the practical operation of a device is more important than the designed or theoretical operation of the device. In *Lindey*, the "ad-tabs"—coupons sold offering discounts on products and containing scratch-off sections offering cash prizes—were considered illegal gambling devices, and the coupons were a "ruse." *See id. Lindey* is also inapposite because it involved a game of pure chance, with no elements of skill.

Similarly, BLCE relies upon an unpublished decision of this Court, *Gracie Technologies, Inc. v. Commonwealth* (Pa. Cmwlth., No. 627 C.D. 2019, filed March 13, 2020), 2020 WL 1231395 (unpublished memorandum), to argue that the Banilla machines are gambling devices *per se*. That case involved a gaming machine with a reel spin and a "nudge" or "pick," and the trial court rejected Gracie's argument that skills such as speed, dexterity, task completion, prize recognition, and the knowledge of when to walk away, rendered the game one of skill rather than chance. *See id.*, slip op. at 6. However, because the ultimate outcome and reward were pulled from a finite pool of sequential outcomes generated by the game software, this was predominantly a game of chance. *See id.* This case is equally inapposite due to testimony and evidence introduced that the games at issue here have the "Follow the Banana" phase, which has the potential to be won every time.

Finally, regarding BLCE's argument that it never observed players playing "Follow the Banana," and that its inclusion is a ruse, the trial court did not address this argument directly. *See* BLCE's Br. at 25, *see also* Trial Ct. Op. at 1-27. BLCE suggests that Pinnacle did not provide evidence to contradict this argument. *See id.* However, Pinnacle's expert Susan Hensel did testify extensively that anecdotal player evidence is not useful in evaluating whether a game is one of skill or chance because players choose to play games in different ways. *See* N.T. 2/18/22, at 26-27. She testified that a game is properly evaluated based upon the four corners of the game. *See id.* at 26. Thus, BLCE's argument is not persuasive. Indeed, by BLCE's same argument, it did not present expert witnesses to contradict Hensel's testimony, which the trial court clearly credited when making its determination. *See, e.g.*, *1997 Chevrolet*, 106 A.3d at 847 n.9; *Lodge*, 283 A.3d at 925; *Clayton*, 987 A.2d at 1262.

Accordingly, the trial court's findings of fact were supported by substantial evidence, and the trial court did not err in granting Pinnacle's motions for return of property. *1997 Chevrolet*, 106 A.3d at 847 n.9.

### IV. CONCLUSION

For the foregoing reasons, we affirm the trial court's order denying BLCE's motions for forfeiture and granting Pinnacle's motions for return of property.

LORI A. DUMAS, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Pinnacle Amusement, LLC | : | |
| | : | |
| v. | : | Nos. 609 - 612 C.D. 2022 |
| | : | |
| Bureau of Liquor Control | : | |
| Enforcement, | : | |
| Appellant | : | |

## **O R D E R**

AND NOW, this 6th day of July, 2023, the order of the Court of Common Pleas of Luzerne County, entered May 18, 2022, is AFFIRMED.

_____
LORI A. DUMAS, Judge